UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ELI DUNN and COLIN ALLEN,<br><br>Plaintiffs,<br><br>v.<br><br>BRYCE HATCH, an individual; HATCH MARINE ENTERPRISE, LLC, et al,<br><br>Defendants. | Case No. 1:15-cv-00479-BLW<br><br>MEMORANDUM DECISION AND ORDER |

## INTRODUCTION

The Court has before it (1) motions to dismiss, for summary judgment, and to strike filed by defendants, Bryce Hatch and Hatch Marine Enterprise, LLC, and (2) a motion for additional discovery filed by plaintiffs Dunn and Allen. The Court held oral argument on June 16, 2016, and took the motions under advisement. For the reasons explained below, the Court will grant the defense motions only in part, and grant the plaintiffs' motion for additional discovery.

## BACKGROUND

Plaintiffs were employed by defendants as deckhands aboard the F/V Silver Bullet for the 2013 Bristol Bay (Alaska) salmon season during the months of June and July. They allege that defendant Hatch verbally promised them a ten percent share of the catch. While the value of the catch is estimated at the time of the vessel's return, buyers

typically pay more than the estimate, and the crew is entitled to have this upward "adjustment" added to the value of the catch for purposes of computing the ultimate share due each seaman.  The plaintiffs allege that defendants failed to pay them the full amount due by not including the adjustment in the valuation computation, by falsifying the value of the catch, and by not providing an accurate accounting as required by statute.

Both plaintiffs allege that their agreements were verbal in nature and never reduced to writing.  Defendants originally disputed this for both plaintiffs but conceded in oral argument that plaintiff Allen had only a verbal agreement.  Defendants continue to allege that plaintiff Dunn had a written agreement, and have proffered a contract with Dunn's signature affixed.  Dunn counters that his signature was forged.  Whether the contracts for hire are in writing or merely verbal makes a big difference in terms of the remedies available.

As remedies, plaintiffs seek recovery for (1) wages equal to the highest crew-share paid out of the port of engagement; (2) double wage penalties under state law; (3) punitive damages under the general maritime law; (4) the sale of the vessel *Silver Bullet* to satisfy the wages and penalties due to plaintiffs; and (5) attorney fees.

## ANALYSIS

A seaman who is cheated on his wages has three options.  If his contract was not in writing, he can obtain his wages and, in some instances an additional sum, pursuant to

46 U.S.C. §§ 10601[1] and 11107.[2]  If his contract was in writing, he has two options. First, he can proceed *in rem*, to obtain a lien against – and ultimately sell – the vessel as provided in 46 U.S.C. § 10602(a)[3], or he can proceed *in personam* against his employer under § 10602(c)[4] and receive damages under general maritime law.

Plaintiffs are pursuing all of these avenues of relief.  Under each, they seek punitive damages.  The defendants have filed a motion to dismiss arguing that plaintiffs are not entitled to punitive damages under any of these three options.  The Court will consider each option and whether plaintiffs are entitled to punitive damages under that option.

## Motion to Dismiss – Punitive Damages for Breach of an Oral Contract

Defendants seek to dismiss plaintiffs' claims for punitive damages and double wages under § 11107.  The Court will use the single phrase "punitive damages" to refer to (1) punitive damages that are available under general maritime law, *Atlantic Sounding*

---

[1] Section 10601 states in part as follows:  "Before proceeding on a voyage, the owner . . . of a fishing vessel . . . shall make a fishing agreement in writing with each seaman employed on board."

[2] Section 11107 states in part as follows:  "An engagement of a seaman contrary to a law of the United States is void. A seaman so engaged may leave the service of the vessel at any time and is entitled to recover the highest rate of wages at the port from which the seaman was engaged or the amount agreed to be given the seaman at the time of engagement, whichever is higher."

[3] Section 10602(a) states in part as follows:  "When fish caught under an agreement under section 10601 . . . are . . . sold, the vessel is liable in rem for the wages and shares of the proceeds of the seamen. An action under this section must be brought within six months after the sale of the fish."

[4] Section 10602(c) states as follows:  "This section does not affect a common law right of a seaman to bring an action to recover the seaman's share of the fish or proceeds."

*Co., Inc. v. Townsend*, 557 U.S. 404, 411 (2009), and (2) double wage penalties that are available under various state laws.

Section 11107 contains the remedy due to a seaman for breach of an oral contract for hire. While plaintiff Allen is clearly suing under an oral contract, it remains to be determined whether plaintiff Dunn is proceeding under a written or oral contract.

Whether the contract was oral or written makes a difference. To protect seamen, Congress declared under § 10601 that all contracts for hire must be in writing. To add teeth to this requirement, Congress declared in § 11107 that an oral contract is void, allowing a seaman to quit at any time and still be able to "recover the highest rate of wages at the port from which the seaman was engaged or the amount agreed to be given the seaman at the time of engagement, whichever is higher." In other words, these statutes were designed to penalize ship owners who failed to offer written contracts for hire. *See Seattle-First Nat. Bank v. Conway,* 98 F. 3d 1195, 1198 (9th Cir. 1996) (agreeing that "§ 11107 provides *a penalty* against vessel owners who employ seamen without written agreements in violation of § 10601") (emphasis added).

Plaintiffs seek punitive damages under § 11107. Yet the statute already provides for a potential penalty by allowing a seaman to quit early and receive the highest rate of wages at his port as if he worked for the full duration of the contract. Punitive damages are not typically piled onto a statutory recovery that is already punitive in nature. *Priyanto v M/S/ Amsterdam,* 2009 WL 1202888 (C.D.Cal. April 30, 2009) (holding that "[t]o allow the recovery of punitive damages in addition to this statutory penalty [under

the Seaman's Wage Act] would permit an unlawful double recovery of punitive damages for the same act"). This is especially true where the statute says nothing about punitive damages generally, is "precisely drawn [and] detailed," and was enacted to provide a specific remedy where "no remedy was previously recognized, or when previous remedies were problematic. . . ." *See Hinck v. U.S.,* 550 U.S. 501, 506 (2007). In that case, the statutory remedy becomes exclusive and preempts any remedies available elsewhere in the law. *Id.*

Those circumstances exist here. Section 11107 was "precisely drawn" by Congress to protect seamen from the "problematic" remedies associated with oral contracts. Hence, under *Hinck,* the remedies set forth in § 11107 are exclusive. That statute says nothing about punitive damages generally, and so any claim by Allen for punitive damages under § 11107 must be dismissed. Likewise, if Dunn's contract is ultimately found to be oral in nature, his claim for punitive damages under § 11107 must be dismissed.

**Motion to Dismiss – Punitive Damages for Breach of a Written Contract**

If Dunn loses his forgery claim, he will be suing for breach of a written contract governed by § 10602. Defendants seek to dismiss his claim for punitive damages under § 10602.

That statute governs wage claims for seaman suing on a written contract. It states that the "the vessel is liable in rem for the wages and shares of the proceeds of the seamen." *See* § 10602(a). That *in rem* action must be "brought within six months after

the sale of the fish." *Id.* The statute also requires the employer to "produce an accounting of the sale and division of proceeds under the agreement" and in the event the employer fails to do so, "the vessel is liable for the highest value alleged for the shares." *See* § 10602(b)(1).

This statute – like §§ 10601 & 11107 – sets forth a comprehensive and precisely drawn remedy designed to protect seaman from being shorted on their wages. Accordingly, under *Hinck's* analysis, § 10602 contains the exclusive remedy for a seaman proceeding *in rem* against the vessel on a breach of written contract claim. *Seattle-First Nat. Bank*, 98 F. 3d at 1197 (stating that § 10602 provides "the exclusive remedy for seamen with written fishing agreements" proceeding *in rem*).

While § 10602 contains the exclusive remedy for *in rem* actions, it also contains a savings clause allowing *in personam* actions. Specifically, § 10602(c) states that "[t]his section does not affect a common law right of a seaman to bring an action to recover the seaman's share of the fish or proceeds." *See* § 10602(c). In interpreting this savings clause, the Ninth Circuit has held that the common law right it preserves does not include the right to proceed *in rem* against the vessel for unpaid wages when the seaman's claim is for breach of a written contract. *Fuller v. Golden Age Fisheries,* 14 F.3d 1405, 1407-08. The Circuit in *Fuller* held that § 10602 preempts all *in rem* claims based on a written

contract – at most, *Fuller* left open a seaman's right to proceed *in personam* against his employer for breach of the written contract.[5]  *Id.*

Plaintiff Dunn argues that (if he loses his forgery claim) he is proceeding here *in personam* against his employer for breach of a written contract.  It is undisputed that plaintiffs' employer was defendant Hatch Marine Enterprise LLC.  Plaintiffs argue that they are pursuing an *in personam* breach of contract claim against Hatch Marine and are entitled to punitive damages under general maritime law if successful on that contract claim.

However, punitive damages are not available under general maritime law for breach of contract claims.  *Gamma-10 Plastics, Inc. v. American President Lines, Ltd.*, 32 F.3d 1244, 1257 (8th Cir. 1994); *Guevara v. Maritime Overseas Corp.*, 59 F.3d 1496, 1513 (5th Cir. 1995) (en banc ); *Ellenwood v. Exxon Shipping Co.*, 984 F.2d 1270, 1283-84 (1st Cir.1993); *Thyssen, Inc. v. S.S. Fortune Star,* 777 F.2d 57, 62-64 (2d Cir. 1985).

These cases do, however, support a claim for punitive damages under maritime law for torts.  *Id.*  Here, plaintiffs have alleged the tort of fraud, both in the concealing of the value of the catch and in the forgery of Dunn's signature on the written contract.  While plaintiffs cannot, under general maritime law, obtain punitive damages for breach of contract, they can obtain them for the tort of fraud.

---

[5] The plaintiffs in *Fuller* had written contracts and were proceeding *in rem* against the vessel.

**MEMORANDUM DECISION AND ORDER - 7**

Therefore, the Court will grant in part and deny in part the motion to dismiss the punitive damages claims. The Court will grant the motion to the extent it seeks to dismiss punitive damages as a remedy for plaintiffs' breach of contract claims under § 11107 (oral contracts), § 10602 (written contracts & *in rem* action), and general maritime law (written contract & *in personam* action), but will deny the motion to the extent it seeks to dismiss punitive damages as a remedy for the fraud claim.

**Motion for Summary Judgment – Statute of Limitations**

Defendants seek summary judgment on the ground that plaintiffs failed to file their lawsuit within the six-month statute of limitations set forth in § 10602. The statute states that "[a]n action under this section must be brought within six months after the sale of the fish." Plaintiffs filed their lawsuit more than a year after the fish were sold.

The limitations period does not apply to Allen's claim – it applies only to claims based on written contracts. *Seattle-First Nat. Bank*, 98 F. 3d at 1197. If Dunn's claim is ultimately found to be based on a written contract, it would be dismissed to the degree he is proceeding *in rem* under § 10602, unless he can show that defendants fraudulently concealed the true value of the catch. *See Key Bank of Washington v. F/V Highland Light,* 1995 WL 415296 (W.D.Wash. Feb. 13, 1995). Dunn has alleged that defendants concealed the value of the catch, an issue that will be discussed further below.

But proceeding *in rem* is not Dunn's only option – he could also proceed *in personam* against Hatch Marine. The defendants do not cite the limitations period applicable to an *in personam* action under general maritime law.

Because questions exist about whether Dunn's claim is timely, and because the limitations period clearly does not apply to Allen's claim, the Court will deny the motion for summary judgment to the extent it is based on the limitations period.

**Motion for Summary Judgment – Fraud Claim**

Defendants move for summary judgment dismissing any claim for fraud or forgery. Defendants claim that forgery is not a cause of action, and that the record contains no evidence of fraud.

But the record does contain defendant Hatch's representation to the Court that Dunn "signed an employment contract" and that "[t]here was no price adjustment for the 2013 salmon catch." *See Hatch Affidavit (Dkt. No. 51-2)* at ¶¶ 5 & 15. Dunn responds that Hatch forged his signature, and that he never signed that contract. *See Dunn Declaration (Dkt. No. 54-1).* In support, Dunn submitted a report by a handwriting expert concluding that the signature on the written contract proffered by defendants was "artificially reproduced" – essentially copied and pasted from another contract that Dunn actually did sign. *See Report (Dkt. No. 55-3).* In addition, Dunn alleges that once he told Hatch that he was not returning for the next year, Hatch told him that "he only paid [adjustments] to guys who returned for the next year." *See Dunn Declaration, supra,* at p. 2. Dunn also claimed that in his experience, the buyer in this case (Leader Creek Fisheries) "customarily" pays an adjustment. *Id.*

Dunn is claiming Hatch has lied to him and this Court about the contract for hire and the adjustment. These conflicting allegations at least raise questions of fact.

MEMORANDUM DECISION AND ORDER - 9

Defendants argue, however, that the forgery claim cannot constitute a cause of action. But submitting a forged document to a court would constitute litigation fraud, and subject the party submitting the forgery to sanctions by the court. *Sun World, Inc. v. Olivarria*, 144 F.R.D. 384 (E.D. Cal. 1992) (court awarded sanctions to plaintiff after finding defendant fabricated documents and gave perjured testimony). But plaintiffs' are also alleging a more traditional fraud with their allegations that defendants concealed the buyer's payment of an adjustment. So the Court rejects the argument that the fraud claim is limited to the forgery allegation and that forgery is not a cause of action.

The defendants raise two additional objections to the fraud allegations. First, they point out that plaintiffs' amended complaint fails to explain this fraud with the particularity required by Rule 9(b). The Court agrees. Although plaintiffs' counsel has explained his fraud claim with the necessary detail as he has responded to the defendants' motions, the fact remains that plaintiffs' complaint is completely insufficient. Plaintiffs are entitled to one opportunity to amend their complaint to provide the necessary specificity required by Rule 9(b). *See Vess v. Ciba-Geigy Corp. U.S.,* 317 F. 3d 1097, 1107 (9th Cir. 2003) (holding that "leave to amend should be granted if it appears at all possible that the plaintiff can correct the defect" under Rule 9(b)).

The defendants' second objection is that the record contains no evidence that they concealed an adjustment or committed any other fraud regarding the value of the catch. Defendants are correct – the record contains no such evidence. Plaintiffs have, however,

filed a motion under Rule 56(d) asking for more time to do discovery on the adjustment issue.

That motion was filed about 3 months after the discovery period was over. Plaintiffs' excuse is that they were not alerted to the issue until April 1, 2016, when Hatch filed his Declaration in support of his summary judgment motion denying that any adjustment had been paid. Up until that time, plaintiffs were assuming Hatch got an adjustment but just refused to pay Dunn's share. *See Dunn Declaration, supra,* at p. 2 (stating that Hatch told Dunn "he only paid [adjustments] to guys who returned for the next year"). Skeptical about Hatch's denial, plaintiffs' counsel served a subpoena duces tecum on the buyer (Leader Creek Fisheries) for records relating to the price paid for the salmon and any adjustment, but the buyer has never responded. *See Merriam Declaration (Dkt. No. 60-2)* at ¶ 2. Plaintiffs now seek additional time to determine from Leader Creek Fisheries whether any adjustment was paid.

The Court finds good cause to allow this very narrow discovery, and will therefore grant the Rule 56(d) motion. The Court will grant plaintiffs 30 days to do discovery limited to whether Leader Creek Fisheries paid any adjustment to defendants concerning the salmon catch at issue here.

**Motion for Summary Judgment – Bryce Hatch Individual Liability**

Defendants moved for summary judgment on the claims against Bryce Hatch individually, arguing that he acted at all times as the owner of defendant Hatch Marine

Enterprise LLC. The plaintiffs did not object, and the Court will grant the motion for summary judgment to that extent.

**Motion for Summary Judgment – Full Payment**

Defendants argue that they have paid the plaintiffs their full share. But resolution of this issue must await the discovery on the adjustment. The Court will therefore deny the motion at this time without prejudice to the rights of defendants to refile the motion depending on the outcome of the further discovery.

**Motion to Strike**

Defendants moved to strike the Declaration of Greg Smith that was filed by plaintiffs only after all briefing was completed. Plaintiffs have not explained why they could not have filed this Declaration in a timely fashion to allow defendants a fair opportunity to respond. The Declaration will be struck.

Defendants also seek to strike statements made by Dunn and Allen regarding what other seamen told them they received as a crew-share. *See Dunn Declaration, supra* (stating that "I know other similarly-situated deckhands who hired out of Naknek Alaska and who received a crewshare of between 12% and 17% for the salmon season"); *Allen Declaration, supra* (stating that "12% is not uncommon as the crewshare for an experienced deckhand similarly-situated out of Naknek Alaska during the salmon season"). These statements are clearly hearsay, and plaintiffs have not offered any exception to allow their admission. The statements will be struck.

**Conclusion**

MEMORANDUM DECISION AND ORDER - 12

The Court will grant the motion to dismiss in part by dismissing any claim for punitive damages under maritime law – and wage penalties under state law – sought under a breach of contract claim brought under § 10601, § 11107, and §§ 10602(a), (b) & (c). Plaintiffs retain, however, their right to seek punitive damages for fraud if they properly amend their fraud claim as discussed above. The motion to dismiss will be denied in all other respects.

The Court will grant the motion for summary judgment to the extent it seeks dismissal of (1) all claims against Bryce Hatch individually; and (2) the fraud claim unless plaintiff cures the pleading insufficiency under Rule 9(b) within 10 days.

The Court will grant the motion to strike the statements of Dunn and Allen and the Declaration of Greg Smith, as explained above. The Court will also grant the motion for additional discovery under Rule 56(d), allowing plaintiffs to do discovery within the next 30 days limited to (1) the purchase price paid by Leader Creek Fisheries for the catch at issue here, and (2) whether Leader Creek Fisheries paid to Hatch any adjustment concerning the salmon catch at issue here.

When the discovery is completed, the parties shall contact the Court's Law Clerk David Metcalf ([dave_metcalf@id.uscourt.gov](dave_metcalf@id.uscourt.gov)) about scheduling the next phase of this litigation.

## ORDER

In accordance with the Memorandum Decision above,

**MEMORANDUM DECISION AND ORDER - 13**

NOW THEREFORE IT IS HEREBY ORDERED, that the motion to dismiss (docket no. 49) shall be GRANTED IN PART AND DENIED IN PART as set forth above.

IT IS FURTHER ORDERED, that the motion for summary judgment (docket no. 50) is GRANTED IN PART AND DENIED IN PART as set forth above.

IT IS FURTHER ORDERED, that plaintiffs shall amend their fraud claim to comply with Federal Rule of Civil Procedure 9(b) within 30 days from the date of this decision or have the claim dismissed without further notice.

IT IS FURTHER ORDERED, that the motion for discovery (docket no. 60) is GRANTED.  The plaintiffs shall be granted 30 days to do discovery limited to (1) the purchase price paid by Leader Creek Fisheries for the catch at issue here, and (2) whether Leader Creek Fisheries paid to Hatch any adjustment concerning the salmon catch at issue here.  When the discovery is completed, the parties shall contact the Court's Law Clerk David Metcalf (dave_metcalf@id.uscourt.gov) about scheduling the next phase of this litigation.

IT IS FURTHER ORDERED, that the motion to strike the Declaration of Greg Smith (docket no. 62) is GRANTED.

IT IS FURTHER ORDERED, that the motion to strike the statements of Dunn and Allen (docket no. 57) is GRANTED.



DATED: August 2, 2016

B. Lynn Winmill
Chief Judge
United States District Court