UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ELI DUNN and COLIN ALLEN,<br><br>    Plaintiffs,<br><br>    v.<br><br>BRYCE HATCH and HATCH MARINE ENTERPRISE, LLC, in personam; the F/V SILVER BULLET, Official Number 991159, her engines, machinery, appurtenances and cargo, in rem;<br><br>    Defendants | Case No. 1:15-cv-479-BLW<br><br>**FINDINGS OF FACT & CONCLUSIONS OF LAW & ORDER** |

## INTRODUCTION

Plaintiffs Dunn and Allen brought this action to recover wages due to them for working as deckhands on a fishing boat operated by defendant Hatch. The Court held a bench trial on November 13, 2017, and requested further briefing that was received on December 7, 2017. The matter is now at issue. For the reasons set forth below, the Court will award plaintiff Dunn the sum of $1,905.45 and sanctions as set forth below, and will dismiss the claims of plaintiff Allen.

## FINDINGS OF FACT

### Plaintiff Dunn

Plaintiff Dunn was employed by defendant Hatch as a deckhand aboard the F/V Silver Bullet for the 2013 Bristol Bay (Alaska) salmon season during the months of June and July. He was verbally promised a wage equal to 10% of the value of the catch minus certain expenses.

The Silver Bullet completed its fishing operations in early July of 2013, and Hatch sold all those fish to Leader Creek Fisheries, receiving a payment of $184,274.52 based on the market price for salmon at that time. To calculate Dunn's wage, Hatch started with a figure equal to 10% of $184,274.52, and then deducted the agreed-upon expenses, ultimately paying Dunn $14,946.73.

At the end of each year, Leader Creek Fisheries calculates its profits and pays boat owners a share of those profits as an incentive to keep them as suppliers. The profit sharing sum is distributed by increasing the price-per-pound paid for the Red Salmon. For the 2013 season, Leader Creek Fisheries increased the price per pound paid to Hatch by 18 ½ cents, and made two profit-sharing payments to Hatch – one in late December 2013, and the other on April 1, 2014. Those two payments totaled $19,054.53.

This payment was described by plaintiffs as a "price adjustment" and by the defendants as "profit-sharing." Actually, it was both: Profits were shared by adjusting the price. But the label is unimportant because the testimony was consistent that this money was often shared with deckhands, if they were returning for the next fishing season, making it part of the "highest wage in the port," a finding that will be explained in the Conclusions of Law section of this decision.

**Findings of Fact & Conclusions of Law & Order – page 2**

For example, Dunn testified that he had been a deckhand on Bristol Bay fishing boats for one season prior to the 2013 season, and that it was commonly understood that the 10% wage due experienced deckhands like himself would include the final price-adjusted payments that were typically made in December and April, whether called price adjustments or profit sharing. Steve Kurian, a fishing boat owner who has operated for many years in Bristol Bay, testified that he paid his experienced deckhands a 10% wage, and that he shared Leader Creek's profit-sharing payment in 2013 with his crew members who agreed to return the next year.

Therefore, the highest wage in the Bristol Bay port was equal to 10% of the value of the catch, including the profit-sharing/price adjustment payment received in December and April. The Leader Creek profit sharing/ price adjustment payment to Hatch for the fish sold from the Silver Bullet for the 2013 salmon season was $19,054.53. Ten percent of $19,054.53 is $1,905.45.

**Plaintiff Allen**

Plaintiff Allen did not attend the trial, and no testimony was elicited from him either by video or through a trial deposition. Consequently, defendant Hatch had no opportunity to cross-examine Allen regarding the allegations he made in pre-trial submissions, such as the complaint and affidavits.

Allen's counsel asks the Court to take judicial notice of Allen's pre-trial filings in this case that, he argues, establish Allen's right to a wage equal to 10% of the catch as an experienced deckhand. But throughout this case, Hatch has disputed Allen's claims, and

**Findings of Fact & Conclusions of Law & Order – page 3**

argued that Allen was not experienced and worked only as a "bleeder," meaning that his wage would be lower than even the 5% allowed to inexperienced deckhands. Hatch claims to have paid that smaller wage in full in July of 2013.

If the Court were to take judicial notice of Allen's allegations, fairness would require taking judicial notice of Hatch's contrary allegations – the resulting stalemate would do nothing to advance Allen's case. But more importantly, making any factual findings in favor of Allen – and ignoring the fact that he skipped trial and avoided cross-examination – would be fundamentally unfair to Hatch. Moreover, judicial notice is only allowed for facts "not subject to reasonable dispute," and that condition does not apply to the disputed duties performed by Allen on board the ship. *See Rule of Evidence 201(b).*

Allen's counsel argues that Dunn's testimony at trial established that Allen had the experience necessary to be considered an experienced deckhand and be entitled to the 10% wage. But once again it would be entirely unjust to allow Dunn to be a surrogate for Allen and deprive Hatch of his right of cross-examination.

Finally, on the eve of trial, Allen's counsel moved for a partial summary judgment that Allen be entitled to a 5% wage based on an affidavit of Steve Kurian submitted by the defense about 19 months earlier. *See Kurian Affidavit* (stating that as a boat owner he paid inexperienced crew members a wage equal to 5% of the value of the catch). Allen's motion was filed more than a year after the deadline for dispositive motions and should be rejected for that reason alone. But as discussed above, the dispute over Allen's duties

precludes any summary judgment on this issue, and requires that Allen attend trial and be subject to cross-examination.

For all the reasons stated above, the Court cannot make any factual findings relating to plaintiff Allen. Accordingly, his claims must be dismissed.

## CONCLUSIONS OF LAW

A seaman who is cheated on his wages has three options. If his contract was not in writing, he can obtain his wages and, in some instances an additional sum, pursuant to 46 U.S.C. §§ 10601[1] and 11107.[2] If his contract was in writing, he has two options. First, he can proceed *in rem*, to obtain a lien against – and ultimately sell – the vessel as provided in 46 U.S.C. § 10602(a)[3], or he can proceed *in personam* against his employer under § 10602(c)[4] and receive damages under general maritime law.

Dunn had only an oral contract. His remedy is therefore set by §§ 10601 & 11107. To protect seamen, Congress declared under § 10601 that all contracts for hire must be in

---

[1] Section 10601 states in part as follows: "Before proceeding on a voyage, the owner . . . of a fishing vessel . . . shall make a fishing agreement in writing with each seaman employed on board."

[2] Section 11107 states in part as follows: "An engagement of a seaman contrary to a law of the United States is void. A seaman so engaged may leave the service of the vessel at any time and is entitled to recover the highest rate of wages at the port from which the seaman was engaged or the amount agreed to be given the seaman at the time of engagement, whichever is higher."

[3] Section 10602(a) states in part as follows: "When fish caught under an agreement under section 10601 . . . are . . . sold, the vessel is liable in rem for the wages and shares of the proceeds of the seamen. An action under this section must be brought within six months after the sale of the fish."

[4] Section 10602(c) states as follows: "This section does not affect a common law right of a seaman to bring an action to recover the seaman's share of the fish or proceeds."

writing. To add teeth to this requirement, Congress declared in § 11107 that an oral contract is void, allowing a seaman to quit at any time and still be able to "recover the highest rate of wages at the port from which the seaman was engaged or the amount agreed to be given the seaman at the time of engagement, whichever is higher." In other words, these statutes were designed to penalize ship owners who failed to offer written contracts for hire. *See Seattle-First Nat. Bank v. Conway,* 98 F. 3d 1195, 1198 (9th Cir. 1996) (agreeing that "§ 11107 provides *a penalty* against vessel owners who employ seamen without written agreements in violation of § 10601") (emphasis added). The Ninth Circuit has interpreted those statutes to award to a seaman with an oral contract "either the wages he orally agreed to, or the highest rate of wages that could be earned by a seaman at the port of hire who has the same rating as the complainant." *TCW Special Credits v. Chloe Z Fishing Co., Inc.,* 129 F.3d 1330, 1333 (9th Cir. 1997).

Dunn was rated as an experienced deckhand. As discussed above, the highest wage in the Bristol Bay port for an experienced deckhand was equal to 10% of the catch, including the profit-sharing/price adjustment payment received in December and April. It is true that the testimony established that the profit-sharing money is only shared with crew members who agree to return the next season, and Dunn did not agree to return. But § 11107 imposes a penalty equal to the highest wage in the port for a seaman of Dunn's rating, and says nothing about eliminating that penalty to comply with various conditions that ship captains impose at their whim. Applying such conditions would emasculate the statutory penalty and ignore the rule that "legislation for the benefit of

**Findings of Fact & Conclusions of Law & Order – page 6**

seamen is to be construed liberally in their favor." *McMahon v. U.S.*, 342 U.S. 25, 27, (1951).

The Court therefore finds that plaintiff Dunn is entitled to an additional $1,905.45 (10% of $19,054.53).

**Hatch's Motion for Judgment**

After plaintiffs' case-in-chief, Hatch moved for judgment under Rule 52(c), arguing that plaintiffs failed to prove the elements of their case. The Court will grant the motion regarding plaintiff Allen, for the reasons stated above.

Regarding plaintiff Dunn, plaintiffs' counsel failed to call any witness at trial to establish the amount of the profit sharing/price adjustment paid by Leader Creek. But Hatch had earlier filed – in this case – the affidavit of David Miller, the General Manager of Leader Creek, showing that the sum was $19,054.53. *See Miller Affidavit (Dkt. No. 78-2)(Exhibits A & B)*. Hatch filed that affidavit in support of his motion for summary judgment.

While the parties argued over whether the Court could take judicial notice of the Miller Affidavit, the real issue is whether the facts contained in the affidavit, submitted by Hatch in support of his motion, are deemed admitted by Hatch. They are. Factual assertions in pleadings are considered judicial admissions conclusively binding on the party who made them. *See American Title Ins. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir.1988). Because Hatch submitted proof of the sums paid by Leader Creek – and there was no dispute over the accuracy of those figures – that submission was binding on

**Findings of Fact & Conclusions of Law & Order – page 7**

Hatch, and Dunn was not required to prove those sums separately at trial. The motion is accordingly denied as to plaintiff Dunn.

**<u>Litigation Fraud</u>**

Dunn alleges that Hatch committed litigation fraud by submitting a Crew Contract containing Dunn's signature that had been forged. Hatch submitted that Crew Contract as part of a motion to dismiss early in this case. In his brief accompanying the motion, counsel stated that "Dunn signed an employment contract with Hatch Marine," *see Brief (Dkt. No. 16)* at p. 5. In support, the brief cites an attached affidavit of Hatch. That affidavit had been originally filed in another case in this District (*Hatch v. Dunn, 1:14-CV-518-REB*), and a copy of that affidavit was attached to Hatch's affidavit in this case. Hatch states in the affidavit that "Dunn signed an employment contract to work for me, Bryce Hatch, the owner of the Silver Bullet, for the June 1, 2013, through August 1, 2013, salmon season." *See Hatch Affidavit (Dkt. No. 16-1)* at ¶ 5. Hatch attached a "Crew Contract" to his affidavit containing a signature of Dunn, and accompanied by the affidavits of Phillips Hayman and Roy Gartner, who swore that "Eli Dunn was one of the other crewmembers who signed crew contracts at this time." *See Gartner Affidavit (Dkt. No. 16-1)* at ¶ 2.

Dunn immediately declared the contract a forgery. *See Response Brief (Dkt. No. 20)*. Hatch responded not by admitting the forgery or by forswearing all use of the Crew Contract but instead by arguing that forgery cannot form the basis for a civil action. *See Reply Brief (Dkt. No. 23)*. In April of 2016, Hatch was still arguing that "Dunn signed an

**Findings of Fact & Conclusions of Law & Order – page 8**

employment contract to work for me . . . .", and arguing that forgery cannot form the basis for a civil action. *See Reply Brief (Dkt. No. 58).*

On August 8, 2016, the Court ruled that submitting a forged document to the court could constitute litigation fraud, and could subject the party submitting the forgery to sanctions by the court. *See Sun World, Inc. v. Olivarria*, 144 F.R.D. 384 (E.D. Cal. 1992) (court awarded sanctions to plaintiff after finding defendant fabricated documents and gave perjured testimony). At this point, quite predictably, plaintiffs pursued the fraud-on-the-court charge, and retained a handwriting expert, Hannah McFarland, whose deposition was taken on September 25, 2017. McFarland is certified with the National Association of Document Examiners and has been qualified as an expert in document examination in at least 75 legal proceedings. *See Deposition* at p. 7. At trial, the Court admitted the deposition into evidence.

Dunn testified at trial that he never signed that contract. In her deposition, McFarland testified that she compared the signature on the Crew Contract submitted by Hatch with an earlier contract actually signed by Dunn, and found that the two signatures were identical in every aspect, something that would be "virtually impossible" to do "manually with the hand." *Id.* at p. 14. She concluded that "one or more of the signatures and initials had to have been artificially placed on one or both of the documents." *Id.* at p. 12. In other words, forged. There is no contrary evidence in the record. And the Court can only conclude that Phillips Hayman and Roy Gartner must have been lying when they said they saw Dunn sign the Crew Contract.

**Findings of Fact & Conclusions of Law & Order – page 9**

Hatch argues that the Crew Contract is irrelevant because he is not relying on it in any way. But this is not a case where a forged document was filed unintentionally and could easily be ignored. Hatch deliberately filed the document, represented in at least two court filings that Dunn signed it, and filed the false affidavits of Hayman and Gartner doubling down on his own lie.

What did Hatch expect Dunn to do, ignore this fraud? That is simply preposterous. Even if Hatch was not relying on the Crew Contract for any legal defense, it was quite predictable and legitimate for Dunn to expend time and resources to reveal the fraud and challenge Hatch's credibility, if for no other reason.

Under its inherent powers, a court may impose sanctions where a party has "acted in bad faith, vexatiously, or for oppressive reasons." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S.Ct. 1749, 1758 (2014). These powers, however, "must be exercised with restraint and discretion." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 44 (1991). Accordingly, the bad-faith requirement sets a "high threshold," *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 649 (9th Cir.1997), which may be met by willful misconduct, or recklessness that is coupled with an improper purpose. *Fink v. Gomez*, 239 F.3d 989, 993–94 (9th Cir.2001).

Hatch has had many opportunities to rebut or explain the charge of forgery, but has not done so. Based on the discussion above, the Court finds that Hatch forged Dunn's signature, intentionally filed it with the Court, represented in at least two court filings that Dunn signed the contract, and procured two additional persons to vouch for

**Findings of Fact & Conclusions of Law & Order – page 10**

the authenticity of Dunn's forged signature. This willful conduct satisfies the "high threshold" for finding that Hatch acted in bad faith, and warrants an award of sanctions.

Therefore, the Court will award to Dunn as sanctions the following: (1) The costs of the handwriting expert Hannah McFarland – that is, her fees for drafting her expert report and her fees for attending the deposition; and (2) The attorney fees Dunn incurred for his attorney's time in preparing for and taking the deposition of McFarland and in otherwise addressing the issue of whether Dunn had signed and employment contract.

## Conclusion

Plaintiff Allen's claims are dismissed. Plaintiff Dunn is awarded (1) additional wages in the sum of $1,905.45; (2) The costs of the handwriting expert Hannah McFarland – that is, her fees for drafting her expert report and her fees for attending the deposition; and (3) The attorney fees Dunn incurred for his attorney's time in preparing for and taking the deposition of McFarland, and otherwise addressing the issue of whether Dunn had signed an employment contract. Regarding items (2) and (3) on this list, plaintiffs' counsel shall submit an affidavit to the Court within thirty days from this decision detailing the costs and fees awarded here. If plaintiffs' counsel believes he is entitled to attorney fees generally, he shall file his motion within the same time frame, thirty days. The Court expresses no opinion whether plaintiffs are entitled to costs and attorney fees generally and, if so, whether those fees should be supplemental, or in addition, to the costs and fees awarded as sanctions.

The Court will enter a separate Judgment as required by Rule 58.

**ORDER**

In accordance with the Findings of Fact and Conclusions of Law set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that Plaintiff Allen's claims are dismissed.

IT IS FURTHER ORDERED, that Plaintiff Dunn is awarded (1) additional wages in the sum of $1,905.45; (2) The costs of the handwriting expert Hannah McFarland – that is, her fees for preparing and drafting her expert report, and her fees for attending the deposition; and (3) The attorney fees Dunn incurred for his attorney's time in preparing for and taking the deposition of McFarland.

IT IS FURTHER ORDERED, that plaintiffs' counsel shall file within thirty days from the date of this decision (1) any motion for attorney fees, and (2) an affidavit detailing the amount of costs and fees awarded here.

DATED: January 4, 2018

_____
B. Lynn Winmill
Chief Judge
United States District Court