UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ELI DUNN and COLIN ALLEN,<br><br>     Plaintiffs,<br><br>        v.<br><br><br>BRYCE HATCH and HATCH MARINE<br>ENTERPRISE, LLC, in personam; the F/V<br>SILVER BULLET, Official Number<br>991159, her engines, machinery,<br>appurtenances and cargo, in rem;<br><br>     Defendants | Case No.  1:15-cv-479-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

_____

## INTRODUCTION

The Court has before it plaintiff Dunn's request for attorney fees as a sanction for

the conduct of defendant Hatch.  For the reasons expressed below, the Court will award

$5,025.25 in fees for Hatch's forgery of the employment contract, and an additional

$5,000 in fees for Hatch's failure to reveal in discovery the payment adjustment figure.

The Court will explain these conclusions after reviewing the background of this

litigation.

## LITIGATION BACKGROUND

Plaintiff Dunn brought this lawsuit to recover wages due him from shipowner

Hatch for the 2013 salmon season in Bristol Bay, Alaska.  In a prior decision, the Court

held that Hatch forged Dunn's signature on an employment contract, intentionally filed it

with the Court, represented in at least two court filings that Dunn signed the contract, and procured two additional persons to lie, vouching for the authenticity of Dunn's forged signature. *See Memorandum Decision (Dkt. No. 110).* The Court held that this willful conduct satisfied the high threshold for finding that Hatch acted in bad faith, and warranted an award of sanctions. That award, the Court held, would consist of the following items: (1) The costs of the handwriting expert Hannah McFarland – that is, her fees for drafting her expert report and attending the deposition; and (2) The time Dunn's attorney spent in preparing for and taking the deposition of McFarland and in otherwise addressing the issue of the contract forgery. *Id.* at p. 11.

In that decision, the Court also stated that "[i]f plaintiffs' counsel believes he is entitled to attorney fees generally, he shall file his motion within the same time frame, thirty days. The Court expresses no opinion whether plaintiffs are entitled to costs and attorney fees generally and, if so, whether those fees should be supplemental, or in addition, to the costs and fees awarded as sanctions." *Id.*

Dunn has now responded with two filings. In the first, he details the fees and costs incurred in revealing the forgery. In the second – a motion for attorney fees generally – he seeks all the attorney fees his attorney incurred in this case. The Court will take up first the questions of the fees and costs for the forgery.

## ATTORNEY FEES FOR FORGERY

Dunn's counsel submits his accounting showing the following: (1) the costs for the handwriting expert were $2,280.25; and (2) Dunn's counsel spent 6.1 hours on this issue

at a rate of $450 an hour.  Adding these amounts results in a sum of $5,025.25.  *See*

*Declaration of Merriam (Dkt. No. 111).*

Hatch argues that the rate of $450 is too high, and cites lower hourly rates in the

Boise Idaho market.  But Dunn's counsel practices in a specialized field in Seattle

Washington, has done so for the past 36 years, and is a past chairman of the Maritime

Section of the Washington State Trial Lawyers Association.  The Court finds his hourly

rate reasonable.

Hatch responds by speculating that Dunn had a contingent fee arrangement with

his counsel, making it unlikely that Dunn "incurred" any fees.  But Hatch cites no

authority holding that fees cannot be awarded based on a finding of bad faith conduct in

litigation whenever the victim has a contingency fee arrangement.  Adopting Hatch's rule

would promote bad faith conduct in contingency cases, an absurd result.

Hatch complains about that the number of hours spent by Dunn's counsel, but the

6.1 hours seems quite conservative given the importance of the issue in the litigation and

the burden of proving a signature was forged.  The Court cannot find the total hours

unreasonable.

For these reasons, the Court will award $5,025.25 in attorney fees and costs for

Hatch's conduct in forging the employment contract.

## MOTION FOR ATTORNEY FEES GENERALLY

### Legal Standard

An award of attorney's fees is appropriate in admiralty only when the shipowner

acted arbitrarily, recalcitrantly, or unreasonably.  *Madeja v. Olympic Packers, LLC,* 310

**Memorandum Decision & Order – page 3**

F.3d 628, 635 (2002).  The district courts have discretion to award "punitive attorney fees" when shipowners are "intentionally dishonest or recalcitrant during the course of litigation."  *Id.* at 636.

**Analysis**

Dunn argues that Hatch avoided service of process, went to "incredible" lengths to avoid paying Dunn's wages, and filed a "blizzard of motions" to harass Dunn.  *See Brief (Dkt. No. 112-1)* at p. 4.  Regarding the service of process, the Judge who transferred this case here from the Western District of Washington – Chief Judge Donohue – denied Dunn's request to impose on Hatch the expense of service of process.  *See Order (Dkt. No. 30).*  Chief Judge Donohue found that (1) Dunn's counsel failed to comply with the Rules regarding service; and (2) counsel's failure contributed to the expenses that Dunn sought to recover.  *Id.*  Hatch may have avoided the service of process but Dunn's counsel made his own missteps – it looks like a wash for attorney fee purposes.

The Court will turn next to Dunn's allegation that Hatch's counsel Kim Trout filed a "blizzard" of harassing motions.  A review of the arguments advanced in those motions shows that they were largely an attempt to apply strictly the Federal Rules of Civil Procedure, an entirely legitimate line of attack.  Indeed, the motions were triggered by the failure of Dunn's counsel to follow the Rules:  At one point the Court observed that although it would deny the motions, it was "certainly troubled by the failure of plaintiffs' counsel to follow the Rules."  *See Memorandum Decision (Dkt. No. 102)* at p. 3.  Here again, the Court can find no basis for an award of attorney fees.

This case was intensely contested, but that was due at least in part to Dunn's claim for punitive damages. That claim was in the case from 2014 until the Court struck the claim in 2016, and it was one factor that led to intense litigation over an otherwise small claim for unpaid wages.

Thus, much of the defense could be called zealous advocacy; nevertheless, part of it did cross the line into obstructionism. During the period of discovery, Dunn propounded interrogatories to Hatch asking for the "gross revenues" in 2013 and 2014. Hatch responded on February 5, 2016, by referring to a certain settlement sheet from the buyer of the salmon catch, Leader Creek Fisheries. That settlement sheet showed that Leader Creek paid Hatch $184,274.52. *See Answers to Interrogatories (Dkt. No. 78-2).*

That response was highly misleading. Hatch knew when he answered those interrogatories (on February 5, 2016) that almost two years earlier (in April of 2014) Leader Creek had paid Hatch an additional sum of $19,504.53.[1] *See Exhibit B to Miller Declaration (Dkt. No. 78-2).* Dunn's interrogatories had asked for Hatch's gross revenues in 2013 and 2014, and the $19,504.53 was clearly a revenue that Hatch knew about when he answered those interrogatories but failed to reveal.

This was no small matter. From the very beginning of this lawsuit in 2014, Dunn was trying to uncover the fact and amount of that payment, despite Hatch's continual

---

[1] Leader Creek paid a total of $19,504.53 in two payments; one in December of 2013 and the other in April of 2014.

denials that it existed.  So, Hatch's failure to reveal the extra payment in response to the interrogatory can only be characterized as a bad faith attempt to obstruct discovery.

Hatch had a chance to redeem himself.  After he filed his misleading response, about a month remained in the discovery process for him to file a supplemental response revealing the payment.  He failed to take advantage of that opportunity.

Instead, Hatch doubled down on his deception.  He filed a motion for summary judgment alleging that the record showed no price adjustment.  *See Motion for Summary Judgment Brief (Dkt. No. 50).*  Dunn, skeptical of Hatch's discovery responses, filed a subpoena on Leader Creek for the final settlement sheet, and asked the Court for an extension of time to respond to Hatch's motion for summary judgment.  The Court granted that request for an extension.

In August of 2016, Leader Creek responded to Dunn's subpoena and produced the accurate settlement sheet showing the $19,504.53 extra payment.  *See Notice Filed by Plaintiffs (Dkt. No. 66).*  Thus, the $19,504.53 sum was finally revealed through Dunn's own digging, not with any help from Hatch.

Hatch acted in bad faith to hide the $19,504.53 payment from Dunn during discovery.  His conduct was dishonest and recalcitrant.  Under the authorities cited above, that conduct warrants an award of attorney fees.

The issue is the scope of those fees.  While Dunn wants an award of all his fees for pursuing this lawsuit, the Court cannot find that Hatch's dishonesty affected every aspect of this case.  As discussed above, Hatch often made legitimate arguments and pursued a vigorous defense, while Dunn's counsel at times failed to follow the Rules and caused his

own harm.  But in two significant areas, Hatch's dishonesty and bad faith resulted in direct harm to Dunn:  Hatch forged the employment contract and he hid the payment adjustment from Leader Creek.  For the former, the Court has already awarded $5,025.25. The latter warrants a similar award because the harm caused, and the effort necessary to uncover the truth, were comparable.  Thus, an award of $5,000 in attorney fees is appropriate for hiding the payment adjustment in discovery.

**CONCLUSION**

Following up on the Court's prior award of attorney fees for the forged contract, the Court will award plaintiff from defendant the sum of $5,025.25.  In addition, the Court will grant in part and deny in part Dunn's motion for attorney fees generally.  The Court will award $5,000 in attorney fees for Hatch's bad faith and dishonesty in failing to reveal the payment adjustment of $19,504.53 in response to discovery requests.  The motion will be denied to the extent it seeks an award of all the attorney fees incurred by plaintiff for this entire case.

The Court will therefore issue a separate judgment, as required by Rule 58(a), in the total sum of $10,025.25, representing the attorney fees awarded to plaintiff from defendant.

**ORDER**

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the plaintiff receive from defendant the sum of $5,025.25 as attorney fees and costs as a sanction for the bad faith conduct of defendant in submitting a forgery to the Court.

**Memorandum Decision & Order – page 7**

IT IS FURTHER ORDERED, that the motion for attorney fees generally (docket no. 112) be GRANTED IN PART AND DENIED IN PART. It is granted to the extent it seeks $5,000 in attorney fees as a sanction for the bad faith conduct in hiding during discovery a sum of money received. It is denied in all other respects.

DATED: May 23, 2018

B. Lynn Winmill
Chief U.S. District Court Judge